[Cite as *In re R.B.*, 2013-Ohio-5877.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: R.B. | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 2013CA00171 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, case no. 2012JCV00099 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | December 23, 2013 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | For Defendant-Appellant: |
| LISA A. LOUY | MARY G. WARLOP |
| STARK CO. D.J.F.S. | Abney Law Office, LLC |
| 221 Third St. SE | 116 Cleveland Ave. NW, Ste. 500 |
| Canton, OH 44702 | Canton, OH 44702 |

*Delaney, J.*

{¶1} Appellant Ryan Boyko ("Father") appeals from the August 8, 2013 judgment entry of the Stark County Court of Common Pleas, Family Court Division awarding permanent custody to appellee Stark County Department of Job and Family Services.

## FACTS AND PROCEDURAL HISTORY

{¶2} Father and Angela Firestone ("Mother") are the parents of R.B., a daughter born January 25, 2012. Appellee filed a complaint for temporary custody and placed R.B. with a foster family on January 27, 2012, where she has remained since. R.B. was adjudicated a dependent child on April 25, 2012 and has remained continuously in the custody of appellee.

{¶3} On July 19, 2012, the trial court found compelling reasons existed to preclude appellee filing for permanent custody because a relative (maternal cousin) came forward and an interstate home study needed to be completed. Mother filed a motion to change legal custody to maternal cousin and appellee filed a motion to extend temporary custody to allow additional time for the interstate home study to be completed. The motion was granted and temporary custody was extended to July 27, 2013. The home study was ultimately denied due to maternal cousin's health issues and concerns with the structural stability of the home.

{¶4} On May 7, 2013, appellee filed a Motion for Permanent Custody. The trial court heard evidence on August 5, 2013 and journalized its findings of fact and conclusions of law granting permanent custody of R.B. to appellee on August 8, 2013.

On August 14, 2013 the trial court issued a nunc pro tunc entry correcting the child's date of birth.

{¶5} The following facts are adduced from the hearing on appellee's Motion for Permanent Custody.

{¶6} Upon obtaining temporary custody of R.B., appellee developed a case plan with both parents[1] which required both parents to: 1) complete a parenting evaluation at Northeast Ohio Behavioral Health and follow all recommendations; 2) successfully complete the Goodwill Parenting program; 3) receive a drug and alcohol evaluation at Quest and follow all treatment recommendations; and 4) maintain stable housing and employment.

{¶7} Father completed the Northeast Ohio Behavioral Health evaluation but did not attend Goodwill Parenting. He testified he knew it was likely he would be returning to prison on a probation violation and he had to be in three places at once: work, the Recovery Center (a requirement through his TASC probation), and Goodwill Parenting; he chose not to complete Goodwill Parenting. On July 30, 2012, Father was incarcerated for a probation violation because he failed to complete court-ordered anger management classes. While in prison, Father obtained a G.E.D., completed a number of programs, and wrote to R.B. through her foster family twice. He was released early, on July 19, 2013, to "CTCC," described as a halfway house.

{¶8} Father has not had contact with R.B. since May 4, 2012. He testified he was afraid to appear for scheduled visits due to issues with Mother, although they are

---

[1] Mother did not obtain the Quest evaluation and did not attend Goodwill Parenting. Her last contact with R.B. was May 4, 2012, and she did not attend the permanent custody hearing. Mother's whereabouts are currently unknown and she is not a party to this appeal.

no longer together. He acknowledged the caseworker set up separate visits for each parent that he still did not attend.

{¶9} R.B. has been in the continuous custody of appellee since April 25, 2012. She was placed with a foster family two days after her birth and this family wants to adopt her. R.B. has bonded with her foster parents and also with her siblings in the foster family. The caseworker testified R.B. is not bonded to Father or Mother because contact with her biological parents has been sporadic.

{¶10} Father appeals from the judgment of the trial court awarding permanent custody to appellee.

{¶11} Father raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶12} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING FATHER'S MOTION TO CONTINUE."

{¶13} "II. THE TRIAL COURT ERRED IN REFUSING TO ALLOW FATHER TO CALL A WITNESS TO TESTIFY ON HIS BEHALF."

{¶14} "III. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶15} "IV. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE

THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I.

{¶16} In his first assignment of error, Father argues the trial court erred in denying his motion to continue the hearing. We disagree.

{¶17} The trial on appellee's motion for permanent custody was scheduled for August 5, 2013. Father had unexpectedly been released from prison early and his trial counsel had learned of his release on August 1, 2013; counsel sought time to subpoena witnesses and to obtain records of programs Father completed through probation and while in prison. Appellee objected and the trial court overruled Father's motion to continue.

{¶18} Juvenile Rule 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." It is well-settled that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19} In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test that takes into account a variety of

competing considerations: "A court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *In re B.B.*, 5th Dist. Stark No. 2010CA00151, 2010-Ohio-4618, ¶ 38, citing *Unger*, supra, 67 Ohio St.2d at 67–68.

{¶20} We find the trial court did not abuse its discretion in overruling the motion to continue the permanent custody hearing. Father had notice of the hearing, was present and represented by counsel. *In re R.H.*, 5th Dist. Stark No. 2012-CA-00008, 2012-Ohio-1811, ¶ 10. We note he was released on July 19, 2013, but apparently had no contact with counsel until August 1, despite the upcoming permanent custody trial.

{¶21} A continuance to subpoena witnesses or obtain probation and prison records would not have changed the evidence that Father did not complete the case plan and despite whatever programming he may have completed in prison, its focus was not parenting. See, *In re Campbell/Spicer Children*, 5th Dist. Stark No. 2002CA00056, 2002-Ohio-3696. The trial court did not abuse its discretion in refusing to grant the continuance.

{¶22} Father's first assignment of error is overruled.

II.

{¶23} In his second assignment of error, Father argues the trial court erred in refusing to allow him to call his mother as a witness when he did not provide her name to appellee in discovery. We disagree.

{¶24} Both parties cite Juv.R. 24 which applies to discovery matters before the juvenile court and states in pertinent part:

(A) Request for discovery

Upon written request, each party of whom discovery is requested shall, to the extent not privileged, produce promptly for inspection, copying, or photographing the following information, documents, and material in that party's custody, control, or possession:

(1) The names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense;

* * * *.

(C) Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an order issued pursuant to this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.

{¶25} We are not persuaded that Juv.R. 24(C) is applicable, however, because there is no evidence in the record that any party sought a discovery order, i.e. filed a motion to compel, which would have given the trial court the option of excluding Father's witness pursuant to the Rule.

{¶26} Instead, the record reveals Father's trial counsel did not provide any discovery to appellee because she was unaware of any potential witnesses until the day of the permanent custody hearing. In the context of the entire proceeding, however, we still find the trial court did not abuse its discretion in excluding the witness. Father sought to call his mother as a witness and appellee objected. Father proffered that his mother would testify to Father's contact with the agency and his caseworker during his incarceration. Because Father was able to testify to these matters firsthand, and it is not apparent his mother's testimony would have been relevant or admissible, we find the trial court did not abuse its discretion in excluding the witness.

{¶27} Father's second assignment of error is overruled.

### III., IV.

{¶28} In his third and fourth assignments of error, Father argues the trial court's decision granting permanent custody of R.B. to appellee was against the manifest weight of the evidence. We disagree. These assignments of error are related and will be considered together.

{¶29} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine

whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Id. at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶30} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶31} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.  Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or

private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶32} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶33} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶34} Our review of the record shows the trial court's decision regarding permanency and placement was supported by clear and convincing evidence.

{¶35} First, the evidence shows Father abandoned R.B. The caseworker testified Father's last visit with R.B. was May 4, 2012. Father acknowledged additional visits had been scheduled, even separate from Mother, but he failed to appear. For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child

have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶36} Second, appellee made reasonable efforts to reunify Father with R.B. and Father failed to comply. Father was given a case plan to complete "calculated to facilitate reunification of the family." He obtained his parenting evaluation as ordered, but did not complete the Goodwill Parenting program nor complete treatment through the Crisis Center. Father's probation for a drug conviction was revoked and he was incarcerated on July 30, 2012. We acknowledge Father used his time in prison and SRCCC to complete drug and alcohol treatment, "Thinking for a Change," and "Cognitive Skills." He obtained his G.E.D. and completed art classes. Unfortunately these attainments do not bear upon his ability to effectively parent and cannot substitute for his failure to complete his case plan.

{¶37} We next turn to the issue of best interest. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of the child to be placed in the permanent custody of SCDJFS pursuant to R.C. 2151.414(D), and we agree.

{¶38} R.B. has been with her foster family since she was two days old and they want to adopt her. She is bonded with her foster parents and siblings. Unfortunately no bond exists between R.B. and Father due to their sporadic limited contact. Father has not named any possible relative placements, and the only possible relative placement named by Mother has been ruled out. The guardian ad litem recommended permanent custody to appellee is in the best interests of R.B.

{¶39} R.B. deserves permanency now. We find no error in awarding permanent custody to appellee and therefore overrule Father's third and fourth assignments of error.

## CONCLUSION

{¶40} Father's four assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, Family Court Division is hereby affirmed.

By: Delaney, J. and

Wise, P.J.

Baldwin, J., concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. JOHN W. WISE


_____
HON. CRAIG R. BALDWIN